[Cite as *State v. Franklin*, 2012-Ohio-3089.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | W. Scott Gwin, P.J. |
|  | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 11-CA-128 |
|  | : |  |
|  | : |  |
| RICHARD FRANKLIN | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:       Criminal Appeal from Licking County
Municipal Court Case No.
11 TRC 08419

JUDGMENT:       Reversed and Remanded

DATE OF JUDGMENT ENTRY:       June 29, 2012

APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

JONATHAN C. DIERNBACH       ROBERT CALESARIC
Assistant Law Director       35 South Park Place, Suite 150
40 W. Main Street       Newark, Ohio  43055
Newark, Ohio  43055

*Edwards, J.*

{¶1} Defendant-appellant, Richard Franklin, appeals from the denial by the Licking County Municipal Court of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2} On August 13, 2011, appellant was arrested and charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d) and a marked lanes violation in violation of R.C. 4511.33. On August 16, 2011, appellant filed a written not guilty plea.

{¶3} Subsequently, on September 13, 2011, appellant filed two Motions to Suppress. Appellant, in one of the motions, argued, in part, that he was illegally stopped. A hearing on such motion was held on October 27, 2011. At the hearing, the sole issue for determination was whether or not the officer had reasonable, articulable suspicion to stop appellant's vehicle.

{¶4} Trooper Jermaine Thaxton of the Ohio State Highway Patrol testified that he was on duty in uniform in a marked cruiser on August 13, 2011. As he was patrolling the City of Newark, Trooper Thaxton observed appellant's car, a 2004 Cadillac CTS, go over the double solid yellow pavement lines. According to the Trooper, after going over the line approximately a half a tire width, appellant "swayed back into his lane." Transcript at 6. Trooper Thaxton pulled appellant over at approximately 2:42 a.m.

{¶5} On cross-examination, the Trooper testified that the only basis for the traffic stop was the marked lanes violation.

{¶6}   A videotape of the traffic stop, as well as still images from the stop, were admitted as exhibits.

{¶7}   Pursuant to a Judgment Entry filed on November 15, 2011, the trial court denied appellant's Motion to Suppress. The trial court, in its Judgment Entry, indicated that the video from Trooper Thaxton's  cruiser revealed that the tires of appellant's vehicle touched the far right line of the double solid center line traffic marking and that tires crossed the double center line by "approximately 3 inches or one half of a tire width." The trial court, in its Judgment Entry, stated, in relevant part,  that "[w]hile it would appear that this is an extremely de-minimis violation of the code the Court believes that when a vehicle's tire crosses onto the painted center line that the vehicle is no longer driven within a single lane or line of traffic."

{¶8}   Thereafter, appellant pleaded no contest to the charges and was found guilty by the trial court. Pursuant to a Judgment Entry filed on December 2, 2011, appellant was sentenced to 90 days in jail with 60 days suspended, was fined $500.00 and was placed on probation for a period of one year. In addition, appellant's driver's license was suspended for a period of one year.

{¶9}   Appellant now raises the following assignment of error on appeal:

{¶10}  "APPELLEE DID NOT MEET ITS BURDEN AND ESTABLISH THAT TROOPER LANNING [SIC] HAD REASONABLE ARTICULABLE SUSPICION TO STOP APPELLEE'S MOTOR VEHICLE."

I

{¶11} Appellant, in his sole assignment of error, argues that the trial court erred in denying appellant's Motion to Suppress. Appellant specifically contends that the trial

court erred in finding that Trooper Thaxton had reasonable, articuable suspicion to stop appellant's vehicle for a marked lanes violation after appellant drove three (3) inches onto a double yellow center line without going across or over the line.

{¶12} Appellate review of a trial court's decision to grant a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Mills,* 62 Ohio St.3d 357, 582 N.E.2d 972 (1992). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993).

{¶13} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); and *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *Williams,* supra. Finally, an appellant may argue the trial court has incorrectly decided

the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist. 1993), and *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist. 1994).

**{¶14}** At issue in the case sub judice is whether or not Trooper Thaxton had reasonable, articulable suspicion to stop appellant's vehicle.  An investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 1999-Ohio-68, 720 N.E.2d 507, citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868 20 L.Ed.2d 889. Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity. *State v. Gedeon*, 81 Ohio App.3d 617, 618, 611 N.E.2d 972 (11th Dist. 1992).  Reasonable suspicion constitutes something less than probable cause. *State v. Carlson*, 102 Ohio App.3d 585, 590, 657 N.E.2d 591 (9th Dist. 1995). The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), ¶ 2 of the syllabus.

**{¶15}** In the case sub judice, the trial court found that Trooper Thaxton had reasonable, articulable suspicion that appellant, by driving three (3) inches onto the double yellow center line, had violated R.C. 4511.33.  R.C. 4511.33 states, in relevant part, as follows: "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully

moving in two or more substantially continuous lines in the same direction, the following rules apply: (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶16} In *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, the Ohio Supreme Court held that, because R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic, when an officer observes a vehicle driving twice across a white edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33. The *Mays* Court stated, in relevant part, as follows: "The court in *Hodge*[1] also stated that it did not intend for its decision to stand for 'the proposition that movement within one lane is a per se violation giving rise to reasonable suspicion, nor does inconsequential movement within a lane give law enforcement carte blanche opportunity to make an investigatory stop.' *Id.,* 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, at ¶ 45. However, when an officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle."   Id. at ¶20.

{¶17} In *State v. Richardson*, 5th Dist. No. 00-CA-A-01-003, 2000 WL 1055917 (July 14, 2000),   the appellee was pulled over after an officer observed his vehicle drive on top of the center line a total of four times. After the appellee was arrested for driving under the influence of alcohol, driving under suspension and a marked lanes violation, he filed a Motion to Suppress. In his motion, the appellee argued that the officer did not

---

[1] The complete citation is *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331 (7th Dist.).

have a reasonable and articulable suspicion that the appellee had violated traffic laws. After the trial court granted such motion, the State appealed.

**{¶18}** In affirming the decision of the trial court, this Court, in *Richardson*, stated, in relevant part, as follows: "Appellee in the case sub judice was cited for violating R.C. 4511.33. It is appellee's alleged violation of such section that was Officer Whitlatch's justification for stopping appellee's vehicle. R.C. 4511.33 requires a motor vehicle to be driven within a single lane. At the January 3, 2000, suppression hearing, Officer Whitlatch testified that appellee's vehicle 'traveled over top of the center line [sic] about a tire width four different times' and that, each time, appellee steered his vehicle back into the northbound lane. Transcript of Proceedings at 15. Officer Whitlatch further testified that appellee's vehicle never crossed over the centerline of the highway and that appellee never actually went left of center. Based on the foregoing, we agree with the trial court that Officer Whitlatch never observed any violation of R.C. 4511.33 since 'R.C. 4511.33, the marked-lanes statute, requires a vehicle to be driven within a single lane. This vehicle was operated within a single lane and further did not go left of the centerline. The defendant 'exactly drove on top of the center line [sic].' See trial court's January 5, 2000 Judgment Entry at 5. Accordingly, since appellee did not violate R.C. 4511.33, which Officer Whitlatch cited as the justification for his stop of appellee's vehicle, Officer Whitlatch lacked an articuable and reasonable suspicion that appellee was operating his motor vehicle in violation of the law. The trial court, therefore, did not err in granting appellee's Motion to Suppress." Id at 2.

**{¶19}** In *State v. Messick*, 5th Dist. No. 06CAC090065, 2007-Ohio-1824, the appellee, who had been stopped and arrested for operating a motor vehicle while under

the influence of alcohol and a marked lanes violation, filed a Motion to Suppress, arguing that there was no articuable and reasonable suspicion to support the traffic stop. At the suppression hearing, the officer testified that he observed the driver's side tires of appellee's vehicle on top of the yellow line on three separate occasions within one mile. The trial court granted such motion and the State of Ohio appealed. In reversing the decision of the trial court, this Court agreed with the trial court that the officer's testimony did not establish a marked lanes violation, but found that the appellee's weaving within his lane of travel and earlier erratic left turn gave the officer a reasonable and articuable suspicion to justify the stop of appellee.   In contrast, see *State v. Landon*, 5th Dist. No. 09-CA-0009, 2009-Ohio-6818. In such case, this Court held that the officer had reasonable, articuable suspicion to stop the appellant after the appellant's driver's side tires went completely over the yellow line to the point that they were not touching the lines.

{¶20} More recently, in *State v. Grigoryan*, 8th Dist. No. 93030, 2010-Ohio-2883, the appellant was stopped after his vehicle drifted to the left, drifted to the right and drove on the yellow lane line on the left. After the appellant filed a Motion to Suppress, the trial court granted the same and the State appealed. In affirming the decision of the trial court, the court, in *Grigoryan*, held that the drifting followed by brief driving on the left yellow edge line constituted "'inconsequential movement within a lane' that does not give rise to articuable suspicion to make an investigatory stop…" Id at ¶25.  See also *City of Mentor v. Phillips*, 11th Dist. No. 99-L-119, 2001 WL 20736 (Dec. 29, 2000), in which the court held that there was no probable cause to stop the appellant for a marked lanes violation.   In such case, the appellant was observed driving onto the

white broken line dividing the two eastbound lanes and then quickly driving back towards the center of the lane.

{¶21} As is stated above, in the case sub judice, the trial court found that the videotape showed that the left tires of appellant's vehicle touched the far right line of the double solid center line traffic marking.  The trial court further found that the tires crossed onto that portion of the double center line by approximately 3 inches.  There was no testimony or evidence that appellant crossed the center line, but rather that appellant drove on the marked center line. Based on the foregoing, we find that Trooper Thaxton did not have reasonable, articuable suspicion that appellant was violating R.C. 4511.33.  We find, therefore, that the trial court erred in denying appellant's Motion to Suppress.

{¶22}  Appellant's sole assignment of error is, therefore, sustained.

**{¶23}** Accordingly, the judgment of the Licking County Municipal Court is reversed and this matter is remanded for further proceedings.


By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur


_____


_____


_____

                                    JUDGES


JAE/d0425

*Farmer, J., dissents*

**{¶24}**  I respectfully dissent from the majority's opinion.

**{¶25}**  I would find that crossing onto the double center line by three inches was an indication of impaired or inattentive driving warranting a stop.  I would also defer to the trial court's analysis of the videotape in its role as the trier of fact.

**{¶26}**  I would affirm the trial court's decision denying the motion to suppress.


_____

HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| RICHARD FRANKLIN | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 11-CA-128 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Municipal Court is reversed and remanded to the trial court for further proceedings.  Costs assessed to appellee.

_____

_____

_____

JUDGES